UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ANGEL C. VERA, individually for himself
and on behalf of all others similarly situated,

        Plaintiff,

        04 Civ. 7502 (RJH)

    - against -

SAKS & COMPANY d/b/a SAKS FIFTH     **MEMORANDUM OPINION**
AVENUE, and UNITED STOREWORKERS,     **AND ORDER**
LOCAL 1102 AND 2567, RWDSU, AFL-CIO,
UFCW,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


      Plaintiff Angel C. Vera brings this action against his former employer, Saks &

Company ("Saks"), and his former union, United Storeworkers, Local 1102 ("Union").

As against Saks, plaintiff seeks damages arising from allegedly unpaid wages during his

employment as a ladies' shoe salesman.  He alleges that Saks's practice of accounting for

refunds of certain returns of merchandise in the calculation of sales commissions was an

unlawful deduction from employees' wages in violation of section 193 of New York's

Labor Law.  N.Y. Labor Law § 193 (McKinney 2004).  Plaintiff previously brought a

similar putative class action against Saks in state court in 2000.  After the action was

removed to federal court, the Hon. John G. Koeltl granted summary judgment dismissing

the complaint in 2002 on the grounds that the claim was arbitrable under the relevant

collective bargaining agreement and that plaintiff had failed to exhaust his remedies

under that agreement.  *Vera v. Saks & Co.*, 218 F. Supp. 2d 490 (S.D.N.Y. 2002).  Judge

Koeltl's decision was affirmed on appeal in 2003. *Vera v. Saks & Co.*, 335 F.3d 109 (2d

Cir. 2003). The present action was instituted against Saks and the Union on September 22, 2004, after the Union declined plaintiff's request of January 6, 2004 to pursue arbitration of his section 193 claim against Saks. As against the Union, plaintiff alleges breach of the duty of fair representation pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) (2000), arising out of the Union's failure to pursue to arbitration.

The parties now move for summary judgment. Plaintiff moves for summary judgment on the issue of Saks's liability for unlawful deduction from wages in violation of section 193. Plaintiff reiterates its position in the prior litigation that this claim is not arbitrable and, if arbitrable, has now been exhausted. Saks moves for summary judgment on several grounds: first that the controversy was bound by the arbitration agreement; second that the claim is barred by the applicable six-month statute of limitations; third, that the claim is still not exhausted given that the Union, as was its right, exercised its judgment not to arbitrate; and finally because on the merits section 193 has not been violated. The Union moves for summary judgment claiming, *inter alia*, that Vera cannot establish that the Union breached its duty of fair representation. Plaintiff does not oppose the Union's motion for summary judgment, now conceding, perhaps for tactical reasons, that the "instant action . . . does not involve . . . unfair representation by the union." (Pl.'s Opp'n/Reply Mem. 10, 16.)

## BACKGROUND

Terms of Employment

Plaintiff was employed by defendant as a ladies' shoe salesman at Saks Fifth Avenue's 611 Fifth Ave location from 1974 to 1975, and again from 1976 to April 2000.

(Vera Dep. 06:02–06:06.)  He was paid on a commission basis.  (Compl. ¶ 20.)  During the course of his employment, plaintiff was a member of United Storeworkers, Local 2567 and 1102, RWDSU, AFL-CIO, UFCW[1] (*id.* at ¶ 23), and his employment was subject to the terms and conditions of a collective bargaining agreement ("CBA") (*id.* at 42) since at least August 1993.

There have been two CBAs between Saks and the Union since 1993 that have governed the terms of plaintiff's employment.  (*See* Saks & Company and United Storeworkers, Local 2567, RWDSU, AFL-CIO Agreement ¶ 6G (effective Aug. 1, 1993), Granofsky Decl. Ex. A ("1993 CBA"); Collective Bargaining Agreement Between Saks & Company and United Storeworkers, Local 2567, RWDSU, AFL-CIO ¶ 7F (effective Feb. 1, 1997, expires Feb. 3, 2001), Granofsky Decl. Ex. B ("1997 CBA").)  Both CBAs contain provisions allowing deductions from salespeople's wages based on "unidentified returns."  Unidentified returns consist of merchandise, here shoes, returned to Saks for a refund but with respect to which the identity of the originating salesperson is not known.  Since such refunds cannot be charged back against an identified salesperson, they are charged back *pro rata* against the commissions of all salespeople in a department.  Thus, Paragraph 7F of the 1997 CBA provides:

> F.  <u>Unidentified Returns</u>.  Effective June 1, 1998, on a monthly basis, all unidentified returns to the New York Store will be charged back against commissions by deducting from sales volume for each salespersons [sic] a prorated figure calculated by dividing the total of said

---

[1] In its brief, the Union notes that it is incorrectly sued by this name.  Instead it identifies itself as Local 1102, RWDSU, UFCW.  Local 2567 is Local 1102's predecessor union.  In December 2000, Local 2567 merged into Local 1102, and Local 1102 assumed its responsibility as the representative for the ladies' shoe salesperson bargaining unit and maintained the terms of the collective bargaining agreement to which Vera's employment was subject.  (Affidavit of Frank Bail, President of Local 1102, Aug. 19, 2005 ("Bail Aff.") ¶ 7.)  Local 1102's assumption of this role post-dates Vera's termination in April 2000.

returns among the employees based on each employee's percentage of net sales for that month.

(1997 CBA ¶ 7F.)

Plaintiff claims that by complying with paragraph 7F of the CBA, Saks violated section 193 of the New York Labor Law. (Compl. Count 1.) Section 193 provides, in relevant part, that:

> 1. No employer shall make any deduction from the wages of an employee, except deductions which:
>   a. are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; or
>   b. are expressly authorized in writing by the employee and are for the benefit of the employee; provided that such authorization is kept on file on the employer's premises. Such authorized deductions shall be limited to payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee.
> 2. No employer shall make any charge against wages, or require an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages under the provisions of subdivision one of this section.

N.Y. Labor Law § 193 (emphasis added). Because unidentified returns deductions are not specified in section 193, plaintiff alleges that Saks's reduction of his gross sales according to the unidentified returns policy—and, thereby, his net wages—is unlawful. (Pl.'s Supp. Mem. 6–8.) Saks contends that the "wages" which are protected by the statute are those defined in written employment agreements, such as the CBA, and that

New York law permits commission "wages" to be calculated net of unidentified returns where an agreement so provides. (Saks's Supp./Opp'n Mem. 14–15.)[2]

Plaintiff's claim under section 301 of the LMRA, 29 U.S.C. § 185(a), alleges, *inter alia*, unfair representation by the Union for its failure to file a grievance and arbitrate Saks's alleged violation on his behalf. (Compl. Count 2.) While this claim has been abandoned, the arbitration clause in the CBA remains relevant and provides as follows:

> 23. Standing Committees and Arbitrations – The Union shall designate a Standing Committee of its own choice to take up with the Employer any matter arising out of the application of this Agreement with a view to its amicable settlement. *Any dispute, claim, grievance or difference arising out of or relating to this Agreement which the Union and the Employer have not been able to settle, shall be submitted to arbitration upon notice by either party* to the other party in writing, stating the nature of the matter to be arbitrated. The matter in dispute shall be submitted to arbitration before the American Arbitration Association of New York, under its Voluntary Labor Arbitration Rules. Both parties agree to accept the award of the arbitrator as final and binding. The arbitrator's award of any opinion rendered in connection therewith shall be limited to the issues presented to him for decision. *In any arbitration, the arbitrator shall be bound by the terms of this agreement and shall have no authority to add to, subtract from, change or modify any provision of this agreement.* Each party shall bear its own costs of arbitration and shall share equally the cost of the arbitrator.
>
> The decision of the arbitrator shall be final and binding on the Union, the employee or employees involved and the Employer. [ . . . ]

(1997 CBA ¶ 23) (emphasis added).

---

[2] In addition to the amount of the commission reductions for unidentified returns, plaintiff seeks injunctive relief to prevent Saks's continued practice with respect to unidentified returns (Compl. Count 4) and exemplary damages (Compl. Count 5). However, the Union and Saks are currently party to a more recent CBA that never governed the terms of Vera's employment and that does not include a provision for the deduction of unidentified returns. (Collective Bargaining Agreement between New York City Saks, L.L.C. d/b/a Saks Fifth Avenue and Local 1102, RWDSU, UFCW AFL-CIO CLC (effective Feb. 3, 2001, expires Jan. 31, 2004), Granofsky Decl. Ex. C ("2001 CBA").)

During the course of his employment, plaintiff never filed any written grievances with the Union, but he verbally complained to Union shop stewards about the unidentified returns issue "many, many times." (Vera Dep. 13:03–13:20, 9:06–9:25.) Plaintiff testified that he first discussed his problem with unidentified returns in conversations with shop stewards and Richard Carbonell, the president of Local 2567, more than five years before his termination. (*Id.* at 12:19–13:02; Vernon Welsh Decl., July 15, 2005 ("Welsh Decl.") ¶ 3.)

Upon his termination in April 2000, the Union pursued a grievance on his behalf and submitted the issue of termination to arbitration on August 9, 2000. (*Id.* at 15:07–15:19; Bail Aff., Ex. D.) There is no indication in the record that either plaintiff or the Union sought to raise the issue of unidentified returns during the course of the grievance and arbitration process. On January 18, 2002, the arbitrator issued a determination that Saks had just cause to terminate plaintiff. (Bail Aff., Ex. D.)

The Prior Action

While plaintiff's termination arbitration was pending, plaintiff filed an action against Saks in state court challenging the unidentified returns provision in the CBA. The Union was not named as a defendant and no allegations were made that it had failed to grieve plaintiff's claim. Saks removed the action to the Southern District of New York on the grounds that plaintiff's state law claim under section 193 was preempted by section 301 of the LMRA, because the action necessarily implicated a collective bargaining agreement. Because the LMRA embodies a congressional intent to maintain a uniform national labor policy, *see Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988), it is well established that "[s]ection 301 preempts not only claims alleging that a

party has violated a provision of the collective bargaining agreement but also those state-law actions that require interpretation or substantial analysis of the terms of the collective bargaining agreement." *Borek v. Weinreb Mgmt.*, 933 F. Supp. 357, 361 (S.D.N.Y. 1996) (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994); *Lingle*, 486 U.S. at 405–06; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987); *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 857–59 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210–11 (1985); *Dougherty v. Am. Tel. & Telegraph Co.,* 902 F.2d 201, 203 (2d Cir. 1990); *Box Tree South, Ltd. v. Bitterman*, 873 F. Supp. 833, 840 (S.D.N.Y. 1995)); *see also* 29 U.S.C. § 185(a); 48B Am. Jur. 2d *Labor and Labor Relations* § 2438 (2005).  Accordingly, Judge Koeltl denied plaintiff's motion to remand on July 13, 2001, finding that "[a]ny commissions that the plaintiff was entitled to were earned pursuant to the collective bargaining agreement and they were owed, if at all, under the collective bargaining agreement." *See Vera*, 218 F. Supp. 2d at 491 (citing to transcript of hearing where Judge Koeltl denied motion to remand).  Thereafter, plaintiff and Saks filed cross-motions for summary judgment, agreeing that there were no unresolved material issues of fact.  On August 22, 2002, Judge Koeltl issued an opinion granting Saks's motion for summary judgment and denying plaintiff's.  *Id.*  Judge Koeltl's decision turned on "whether the CBA, when considered in its entirety, requires the parties to submit their claims to grievance procedures, including arbitration." *Id.* at 493.  Because Judge Koeltl construed the CBA's arbitration and grievance procedures broadly, in keeping with general federal policy with respect to arbitration and the LMRA, he found that the dispute before the court was covered by the CBA, and that plaintiff was

required to exhaust grievance and arbitration procedures before bringing an action in court. *Id.* at 495.

Plaintiff then appealed, arguing that (1) his section 193 claim under New York law was not preempted by section 301 of the LMRA, and that removal was therefore improper; and (2), the district court wrongly decided that the dispute was arbitrable and therefore subject to the requirement to exhaust. The Second Circuit disagreed on both grounds. *Vera*, 335 F.3d 109.

On the issue of preemption, the court noted that "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law." 335 F.3d at 114 (internal quotation marks omitted) (citing *Allis-Chalmers Corp.*, 471 U.S. at 220). The court held that because a challenge to the lawfulness of a term in the CBA requires its "substantial interpretation," the claim was necessarily preempted by federal law. 335 F.3d at 116. Therefore, "[p]ursuant to the complete preemption doctrine, federal jurisdiction exists and removal of this case was proper." *Id.*

With respect to arbitrability, the above-quoted arbitration clause states that "the arbitrator shall be bound by the terms of this agreement and shall have no authority to add to, subtract from, change or modify any provision of this agreement." (1997 CBA ¶ 23.) Plaintiff argued on appeal, as he did below, that this clause excluded his section 193 claim from arbitration since a finding that paragraph 7A of the CBA was unlawful would have impermissibly allowed the arbitrator to change or modify a provision of the agreement. The Second Circuit applied a two-part test to determine the arbitrability of

claims under the CBA: "(1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue comes within the scope of the arbitration agreement." *Vera*, 335 F.3d at 117 (citing *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002)). The court determined that the language in the CBA requiring arbitration of "[a]ny dispute, claim, grievance or difference arising out of or relating to this Agreement which the Union and the Employer have not been able to settle," constitutes a broad arbitration clause. *Id.* The court also found the "no-change-or-modification" clause ambiguous, and was unsure "whether the clause excludes Vera's grievance from arbitration." *Id.* at 118 (internal quotation marks, brackets, and citation omitted). However, the court's "doubts were resolved by the binding undertaking of Saks's counsel that in no dispute in which an employee challenges the lawfulness of a provision of the CBA will Saks contend to the arbitrator that the 'no-change' clause bars the arbitrator from finding the provision unlawful and accordingly granting relief to the employee." *Id.* The court finally concluded as follows:

> Given the ambiguity of the clause in its relation to this issue, the presumption in favor of coverage, and the binding undertaking of Saks not to argue in any case that the arbitrator lacks authority by reason of the "no-change-or-modification" clause to find a CBA provision illegal and award relief accordingly, we conclude that Vera's section 193 claim is arbitrable.

*Id.* Having concluded that plaintiff's claim was preempted by section 301 of the LMRA, and that his claim was arbitrable, the Second Circuit held that the district court's dismissal of plaintiff's claim for failure to exhaust his remedies under the CBA was proper.

<u>The Current Action</u>

Following the issuance of the Second Circuit opinion and order, plaintiff wrote to the Union explaining his claim, its procedural status, the Second Circuit's opinion, and requesting that the Union grieve the matter by letters dated January 6, 2004 (Granofsky Decl. Ex. H) and March 23, 2004 (*see* Compl. ¶ 57). The request was made because the CBA, as is generally the case in labor disputes, permits the Union—not the employee—to initiate grievance procedures. (1997 CBA ¶ 23; Pl.'s Opp'n/Reply Mem. 6.) The Union, however, declined to pursue a grievance or arbitration because (1) it did not believe the claim involved a violation of the CBA since the contract clearly allowed the deductions at issue, (2) it did not agree that Vera's interpretation of the law was correct, (3) it would not give the arbitrator the power to "subtract from, change or modify" a provision of the CBA and (4) it believed Vera's claims were untimely. (Bail Aff. ¶ 17-19, 21.)[3]

The instant action was filed on September 22, 2004. As the parties have again agreed that there are no disputed material issues of fact, the matter is ripe for summary judgment. For the reasons outlined below, the Court finds that plaintiff is bound by the Union's decision not to pursue his grievance, and therefore plaintiff cannot bring suit against Saks because his claim remains unexhausted. It is worth noting that an employee whose union declines to pursue his grievance on his behalf is not wholly without recourse

---

[3] Although the Union does not offer it as an additional ground for deciding not to arbitrate Vera's section 193 claim, Saks submits evidence tending to show that the unidentified returns issue was in fact submitted to arbitration in 1997 (Granofsky Decl., Ex. D) and that the issue was resolved through collective bargaining (Debra McRae Aff. Dec. 21, 2001 ¶ 3, Granofsky Decl., Ex. I) resulting in the removal of the unidentified returns provision in the 2001 CBA (*id.*). Plaintiff argues that the issue of unidentified returns alleged in this action was not at issue in the 1997 arbitration. (Pl.'s Opp'n/Reply Mem. 9.) It is true that there is not evidence on the record affirmatively establishing that the precise issue here was arbitrated in 1997, because the arbitration demand only seeks relief in the form of "[c]ompensation for loss of earnings, for straight commission sales associates at Saks Fifth Avenue. Due to detrimental return policies." (Granofsky Decl., Ex. D.) However, plaintiff's argument that the collective bargaining did not ultimately resolve the unidentified returns dispute is based on his erroneous review of the 1997 CBA, mistaking it for the 2001 CBA. (Pl.'s Opp'n/Reply Mem. 9.) It is quite clear that the 2001 CBA eliminated the unidentified returns provision found in the 1993 and 1997 CBAs. (*See supra* note 2; 2001 CBA.)

under the law. As discussed in greater detail, *infra*, when an employee has a claim against his employer arising under the CBA, but that claim remains unexhausted, the employee may still resort to federal court by bringing a so-called "hybrid" action under section 301 of the LMRA against the employer and the union. This is referred to as a "hybrid" claim because there effectively are *two* causes of action: One against the employer under the collective bargaining agreement and another against the union for breach of duty of fair representation. "[T]he two claims are inextricably interdependent. To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 165 (1988) (bracketed language and ellipses in original) (citing *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66–67 (1981)). The employee's failure to exhaust will not bar a hybrid action as long as he can prove that the union has breached its duty of fair representation in failing to pursue his grievance.[4] While plaintiff may proceed only against Saks and need not name the Union, he would ordinarily need to establish the Union's breach of duty in order to proceed against the employer. Vera contends, however, that this is not a typical hybrid action against Saks since he has now abandoned his claim that the Union breached the duty of fair representation by declining to pursue arbitration on his behalf. (Pl.'s Opp'n/Reply Mem. 10-11.) Whether or not his section 301 action against Saks is properly characterized as hybrid, it has been found by the Second Circuit to assert an arbitrable claim. And since

---

[4] The exhaustion requirement "works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary or perfunctory fashion as to breach its duty of fair representation." *DelCostello*, 462 U.S. at 164. In such circumstances, the employee may bring suit against the employer and the union, notwithstanding a failure to exhaust.

Vera cannot establish that he falls within any of the narrow exceptions to the exhaustion requirement, his claim must be dismissed.

**DISCUSSION**

The starting point for the Court's analysis of these motions is the Second Circuit's determination that plaintiff's state-law section 193 claim is preempted by section 301 of the LMRA, and further, that this claim is arbitrable pursuant to the terms of the CBA. In spite of this determination, plaintiff maintains that his claim is <u>not</u> arbitrable (Pl.'s Opp'n/Reply Mem. 2) and that the Second Circuit's "belief that the matter could proceed to arbitration absent any argument by [d]efendant that the arbitrator lacked authority [] was in error" (*id.* at 6). Plaintiff essentially takes the position that, in finding his section 301 claim to be arbitrable, the Second Circuit failed to foresee that the Union might decline to pursue the grievance to arbitration. In light of the well-established and broad discretion vested in unions to determine whether to pursue grievances on behalf of their members, this position lacks merit. *See* discussion *infra*. In his complaint, plaintiff alleges that the union's "failure to grieve the matter inappropriately thwarted the intent of the Second Circuit's decision." (Compl. ¶ 63.) However, the Second Circuit's decision did not provide plaintiff with a guarantee of arbitration. To the extent we may ascribe any "intent" to the decision, it was simply to afford him access to those procedures traditionally available to employees whose employment is governed by a collective bargaining agreement containing a broad arbitration clause. Within this framework, as plaintiff's counsel notes, "[n]o grievance can be filed . . . no negotiations can be held and no request for arbitration can be filed absent the consent . . . of the union." (Pl.'s Opp'n/Reply Mem. 6.) While the Union's decision not to arbitrate Vera's claim might

theoretically constitute a breach of the duty of fair representation, and thereby provide the basis for a hybrid action against Saks, it does not otherwise convert an arbitrable claim into a nonarbitrable one.

1.     Failure to Exhaust

Because the claim has been found arbitrable, plaintiff "is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement" before bringing suit against his employer in federal court. *DelCostello*, 462 U.S. at 163.

Federal labor policy is premised on the theory that "by pooling their economic strength and acting through a labor organization freely chosen by the majority, the employees of an appropriate unit have the most effective means of bargaining for improvements in wages, hours, and working conditions. The policy therefore extinguishes the individual employee's power to order his own relations with his employer and creates a power vested in the chosen representative to act in the interests of all employees." *N.L.R.B. v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967). Section 301 of the LMRA does, however, authorize suits by individual employees against their employers. The Supreme Court held in *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 451 (1957), that section 301 "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements and includes within that federal law specific performance of promises to arbitrate grievances under collective bargaining agreements." This conclusion was founded on section 301's legislative history, which indicates that resort to federal courts and the development of a uniform body of law would tend "to encourage the making of agreements and to promote

industrial peace through faithful performance by the parties." *Id.* at 454 (citing S. Rep.

No. 80-105, at 15 (1947)). In *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1964), the

Supreme Court explained that the right to pursue a cause of action in federal court under

section 301 is necessarily limited by the federal labor policy requiring that individual

employees exhaust contractually agreed-upon remedies:

> A contrary rule which would permit an individual
> employee to completely sidestep available grievance
> procedures in favor of a law suit has little to commend it. . .
> . [I]t would deprive employer and union of the ability to
> establish a uniform and exclusive method for orderly
> settlement of employee grievances. If a grievance
> procedure cannot be made exclusive, it loses much of its
> desirability as a method of settlement. A rule creating such
> a situation would "inevitably exert a disruptive influence
> upon both the negotiation and administration of collective
> agreements."

*Id.* at 653 (citing *Local 174, Teamsters v. Lucas-Flour Co.*, 369 U.S. 95 (1962)).

When the applicable CBA provides for grievance procedures, therefore, these procedures

are the preferred method of resolving disputes between the employer and the employee,

and unless the employee has exhausted these remedies, a suit under section 301 cannot be

maintained. *Republic Steel*, 379 U.S. at 653; *Dougherty v. American Tel. & Tel. Co.*, 902

F.2d 201, 204 (2d Cir. 1990).

Because the Second Circuit has held that the dispute between Vera and Saks is

arbitrable under the CBA, 335 F.3d at 118, he is bound by the Union's decision not to

pursue arbitration and, therefore, has not exhausted his contractual remedies under the

CBA. *See, e.g.*, *Vaca v. Sipes*, 386 U.S. 171, 182 (1967) ("The collective bargaining

system . . . of necessity subordinates the interests of an individual employee to the

collective interests of all employees in a bargaining unit."); *Allis-Chalmers Mfg. Co.*, 388

U.S. at 180 ("The employee may disagree with many of the union decisions but is bound by them. 'The majority-rule concept is today unquestionably at the center of our federal labor policy.' 'The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.'") (internal footnote and citation omitted).

There are, however, circumstances under which exhaustion of an arbitrable claim is not required before an employee may resort to federal court for relief. These circumstances are (1) where the union has breached its duty of fair representation (the "hybrid" claim), *Vaca*, 386 U.S. at 185; (2) where resort to the grievance procedure can be shown to be futile, *Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 329–31 (1969); and (3) where the grievance process has been repudiated by the employer, *Vaca*, 386 U.S. at 185. *See also Abdelmesih v. Waldorf-Astoria*, 1995 WL 293634, at *4 (S.D.N.Y. May 11, 1995) (stating that if employee is unable to demonstrate that union's failure to process grievance was result of either the union's breach of duty of fair representation or employer's repudiation, failure to exhaust will bar the complaint); *La Bhuhn v. Bulkmatic Transport Co.*, 865 F.2d 119, 120 (7th Cir. 1988) (holding that where employee cannot establish union's breach of duty of fair representation in failing to process grievance, he must "abide the outcome" of the contractual remedies); *Williams v. Sea-Land Corp.*, 844 F.2d 17, 20–21 (1st Cir. 1988) (barring employee complaint because he did not demonstrate union's breach of duty of fair representation in failing to pursue his grievance) (both cases cited in *Abdelmesih*).

In order to be excused from the exhaustion requirement based on a union's breach of the duty of fair representation, the employee must adequately plead and eventually prove that breach, even if only the employer is sued. *DelCostello*, 462 U.S. 151; *Vaca*, 386 U.S. at 186. The duty of fair representation "stands 'as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law," *DelCostello*, 462 U.S. at 164 n.14 (citing *Vaca*, 383 U.S. at 171), and its breach provides an avenue into federal court otherwise unavailable to individual employees. Such an action is known as a hybrid section 301–unfair representation claim. *See id.* at 164 (citing *Mitchell*, 451 U.S. at 66).

In this case, plaintiff originally brought a claim of breach of duty of fair representation against the Union. However, Vera now concedes that the Union did not breach its duty of fair representation by declining to pursue arbitration of his claim. (Pl.'s Opp'n/Reply Mem. 15–16.) Accordingly, Vera cannot claim this exception to the requirement that he exhaust the grievance procedures of the CBA.

In any event, there is nothing in the record to support a finding that the Union has breached its duty of fair representation. A union's refusal to pursue a grievance to arbitration breaches its duty of fair representation "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.*; *see also Samuels v. Air Transport Local 504*, 992 F.3d 12, 16 (2d. Cir. 1993). "The duty of fair representation marks the outer boundary of a union's broad discretion to represent members of a bargaining unit." *Acosta v. Potter*, 410 F. Supp. 2d 298, 308 (S.D.N.Y. 2006). "Because the NLRA allows 'a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of

the ability to bargain individually or to select a minority union as their representative,' it is the duty of the exclusive bargaining agent invested with this authority 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Id.* (quoting *DelCostello*, 462 U.S. at 164 n.14; *Vaca*, 386 U.S. at 177). A union's failure or refusal to pursue a grievance on its own does not constitute a breach of the duty of fair representation, *see Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552 (S.D.N.Y. 2005) (citing *Reed v. Int'l U.A.W.*, 945 F.2d 198, 203 (7th Cir. 1991), unless that failure or refusal may be "fairly characterized as so far outside of a 'wide range of reasonableness' that it is wholly 'irrational or arbitrary,'" *Airline Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991); *see also Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (citing same); *Cruz v. Int'l Bhd. of Elec. Workers, Local No. 3*, 34 F.3d 1148, 1153–54 (2d Cir. 1994) (citing *Ryan v. N.Y. Newspaper Printing*, 590 F.2d 451, 455 (2d Cir. 1979)) ("[T]he duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance."). Here the Union has submitted uncontested evidence that it made a good faith decision not to arbitrate a claim that it believed it would have lost. (Local 1102 Opp'n/Supp. Mem. 14; Bail Aff. ¶ 15.) In light of the "broad discretion" afforded to unions in determining what action to take on behalf of their members, and in the absence of any allegations or facts tending to show that the Union's decision not to arbitrate plaintiff's claim was "outside a wide range of reasonableness," plaintiff is unable to make the showing necessary to excuse the failure to exhaust.

Plaintiff also argues that he is excused from the exhaustion requirement because appeal to the Union would have been, and in fact was, futile. (Pl.'s Opp'n/Reply Mem. 7.) The Court does not agree that the futility exception is applicable in this case. The futility exception exists because contractual remedies "are often controlled by the union and the employer, [and] may well prove unsatisfactory for the individual grievant. The problem then is to determine under what circumstances the individual employee may obtain judicial review of his [section 301] claim despite his failure to secure relief through the contractual remedial procedures." *Vaca*, 386 U.S. at 185. In *Glover*, 393 U.S. at 330, the Supreme Court articulated "another of the most obvious exceptions to the exhaustion requirement—the situation where the effort to proceed formally with contractual or administrative remedies would be wholly futile." While futility is a recognized exception to the exhaustion requirement, plaintiff incorrectly infers that whenever a union makes a decision not to pursue a grievance to arbitration (perhaps erroneously, but without any breach of its duty of fair representation), this falls within the futility exception as defined in *Glover*. (Pl.'s Opp'n/Reply Mem. 7–8.) Such a position seems untenable in light of the circumstances constituting futility in *Glover* itself. Therein, the plaintiff-employees alleged that their bargaining representatives were acting in concert with the employer to purposely discriminate on the basis of race. *Id.* at 331. In the type of situation presented in *Glover*, resort to contractual remedies would require the employees to seek relief through representatives their complaint alleged were in fact party to the discrimination. Subsequent to Glover, the futility exception has been largely limited to situations where the operation of bias or prejudice renders any attempts to resort to contractual remedies useless, and does not apply to situations where the union

decides not to pursue a grievance in the appropriate exercise of its discretion.  *See, e.g.*, *Miklavic v. USAir, Inc.*, 21 F.3d 551, 555 (3d Cir. 1994) ("A proceeding in arbitration is futile only when, through bias, prejudice or predisposition *on the part of the arbitration board*, there would be no point in submitting the claim to arbitration.") (emphasis in original); *Bautista v. Pan Am. World Airlines, Inc.*, 828 F.2d 546, 552 (9th Cir. 1987) ("The mere fact that the union disagrees with the dismissed employee on the merits of their wrongful discharge claim does not mean that resort to the Adjustment Board would be 'absolutely futile' within the meaning of *Glover*. . . . Ours is a case of legal disagreement, not one of invidious discrimination or unjustified hostility.");[5] *Martin v. Warrington*, 2002 WL 341000, at *2 (E.D. Pa. Mar. 4, 2002) ("The unresponsiveness of the union and the employer does not render the administrative remedy futile. . . . There is no averment of bias, prejudice or predisposition on the part of the Board.") (citing *Miklavic*); *Everett v. USAir Group, Inc.*, 927 F. Supp. 478, 485 (D.D.C. 1996) (noting that the rationale underlying futility exception "is that individual employees cannot expect a fair hearing from adjustment boards where the employees' putative representative, the union, is itself the offending party").

Because Vera does not proffer any evidence to support a finding that the Union would act with prejudice, bias or hostility, he cannot rely on the futility exception to avoid the exhaustion requirement.  Furthermore, Vera does not argue that the other exceptions (that the employer repudiated the grievance process or that the grievance

---

[5] *Bautista* was brought pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq. (2000), not pursuant to the LMRA.  However, although the "[a]cts are not wholly synonymous and cannot be interchanged indiscriminately," *Dian v. United Steelworkers of Am.*, 486 F. Supp. 700, 706 n.33 (E.D. Pa. 1980), the same standards with respect to futility are applied under both Acts, as evident in *Bautista* and *Glover* itself.  *Glover* is in fact an RLA case, but its reasoning was based largely on *Vaca* (an LMRA case), and *Glover* has been relied upon as the basis for the futility exception under the LMRA.  Analogies are frequently drawn between the two acts, and the Supreme Court has noted that it refers to the LMRA in construing the RLA.  *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383 (1969).

procedure was not intended as the sole remedy for contract violations) are applicable here.  Having failed to exhaust his claim, the present action is barred.

2.  Statute of Limitations

Assuming, *arguendo*, that plaintiff is not subject to or has satisfied the exhaustion requirement, his claim would nevertheless be time-barred.  As the Supreme Court explained in *DelCostello*, 462 U.S. at 158, there is no federal statute of limitations expressly applicable to a claim brought under section 301.  In such circumstances, a federal court must "'borrow' the most suitable statute or other rule of timeliness from some other source."  *Id.*  Typically federal courts conclude "that Congress intended that the courts apply the most closely analogous statute of limitations under state law.  However, where state statutes of limitations are at variance with the purpose underlying the operation of the federal substantive law at issue, it may be appropriate to instead use "timeliness rules drawn from federal law—either express limitations periods from related federal statutes or such alternatives as laches."  *Id.* at 161–62.

Finding that hybrid suits under section 301 have "no close analogy in ordinary state law," *id.* at 165, and balancing the strong federal interest in the rapid resolution of labor disputes against the interest of an aggrieved employee in having adequate time to assess the quality of representation by his union, the *DelCostello* Court found that claims for unfair labor practices under of the NLRA bore a strong "family resemblance" to the interests at stake in a hybrid suit, *id.* at 169–70.  Therefore, the Court applied the six-month limitation period found in section 10(b) of the NLRA to hybrid section 301 claims.  *Id.* at 171 (citing *Mitchell*, 451 U.S. at 70 (concurrence)).

Plaintiff contends that the six-month limitation period is not appropriate because his action is not, he claims, a hybrid action in that it does not allege a breach of the CBA by Saks and—at least after summary judgment is granted—will no longer allege breach of the duty of fair representation by the Union. (*See* Pl.'s Opp'n/Reply Mem. 11–12.) Plaintiff further argues that the interests at stake in *DelCostello* are missing in this case because his claim is not arbitrable, and therefore does not run afoul of the federal policies of promoting stable bargaining relationships and the private resolution of disputes under collective bargaining agreements. (*Id.* at 12.) As discussed above, to the extent plaintiff relies on the nonarbitrability of his claim to support his position, he is incorrect. Furthermore, while plaintiff is correct that hybrid actions typically involve claims that the employer-defendant breached the CBA, *see, e.g.*, *Mazlish v. Branch 36, Nat'l Assoc. of Letter Carriers AFL-CIO*, 2005 WL 1244793, at *4 (S.D.N.Y. May 26, 2005), the fact that the section 301 claim in this case does not allege a violation of the CBA does not preclude a finding that Vera's claim is hybrid and therefore subject to the six-month statute of limitations. As more fully discussed above, when a claim against an employer is arbitrable under a mandatory arbitration clause, it is well settled that the aggrieved employee must exhaust exclusive grievance and arbitration procedures established by the bargaining agreement. *See Vaca*, 386 U.S. at 184–85 (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965)). In this case, as in the typical hybrid claim, plaintiff seeks to avoid the otherwise binding consequences of the Union's decision not to arbitrate his unidentified returns claim, and proceed against his employer in federal court. This implicates the precise interests at stake in *DelCostello* and underlying the six-month limitations period in section 10(b) of the NLRA, and is subject to the same six-month

statute of limitations. *See DelCostello*, 462 U.S. at 171 (citing *Mitchell*, 451 U.S. at 70–71 (Stewart, J. concurring)) ("[I]n § 10(b) 'Congress established a limitations period attuned to what it viewed as the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system.'")

In a hybrid action, "the cause of action accrues . . . at the time that [plaintiff] knew or reasonably should have known of the union's alleged breach of the duty of fair representation." *Sullivan v. Air Transport Local 501 TWU*, 2004 WL 2851785, at *3 (E.D.N.Y. Dec. 6, 2004) (citing *Santos v. Dist. Council of New York City & Vicinity of United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 619 F.2d 963, 969 (2d Cir. 1980)); *White v. White Rose Food*, 128 F.3d 100, 114 (2d Cir. 1997). The relevant inquiry is when plaintiff "learn[ed] of the union action or inaction about which [he] complains." *Alteri v. Gen. Motors Corp.*, 116 F.3d 465, at *3 (2d Cir. 1997) (unpublished opinion). Plaintiff testified that he had been repeatedly complaining to shop stewards and the Union president for *at least* five years prior to his termination in 2000. Surely by the time of his termination, when the Union grieved the termination but not the unidentified returns complaint, plaintiff knew or should have known of the alleged breach of duty of fair representation. Plaintiff could have invoked union grievance procedures at this time but elected not to do so, instead bringing an action against Saks in state court. Having made that tactical decision in October, 2000, his present action is untimely.

3.      <u>Plaintiff's Rule 60 Motion</u>

Plaintiff moves under Rule 60 for vacatur of the August 30, 2002 judgment

rendered in the prior action and requests that the action filed on October 18, 2000 be

reinstated.  Fed. R. Civ. P. 60; (Compl. ¶¶ 63–64).  The standard for granting such a

motion is high.

> A true Rule 60(b) motion must be predicated on one of five
> narrow and specific grounds or on a sixth ground which,
> despite its open wording, has been narrowly cabined by the
> precedent of this Court:  (1) mistake, inadvertence,
> surprise, or excusable neglect; (2) newly discovered
> evidence which by due diligence could not have been
> discovered in time to move for a new trial under Rule
> 59(b); (3) fraud (whether heretofore denominated intrinsic
> or extrinsic), misrepresentation, or other misconduct of an
> adverse party; (4) the judgment is void; (5) the judgment
> has been satisfied, released, or discharged, or a prior
> judgment upon which it is based has been reversed or
> otherwise vacated, or it is no longer equitable that the
> judgment should have prospective application; or (6) *any
> other reason justifying relief from the operation of the
> judgment*.

*Harris v. United States*, 367 F.3d 74, 80 (2d Cir. 2004) (emphasis in original) (citing Fed.

R. Civ. P. 60(b)).  Plaintiff's Rule 60(b) claim is predicated on the preposition that "[t]he

Union's failure to grieve the matter inappropriately thwarted the intent of the Second

Circuit's decision."  (Compl. ¶ 63.)  As fully discussed above, this Court does not read

the Second Circuit's decision as mandating arbitration.  Having found plaintiff's claim to

be arbitrable, plaintiff was placed in the position of a typical employee seeking the

representation of his union to address an alleged grievance.  The duties of the Union in

the exercise of its judgment as to whether it would pursue arbitration were not before the

Court of Appeals, and are not within the purview of its decision.  Therefore, the Court

finds no reason justifying relief from the operation of the judgment previously entered by the district court.

## CONCLUSION

In light of the foregoing, Saks's motion for summary judgment [39] is granted and plaintiff's motions for summary judgment [15] and vacatur of judgment are denied. The Union's uncontested motion for summary judgment [30] is also granted. The Clerk of the Court is directed to close the case.

SO ORDERED

Dated:    New York, New York
          March 31, 2006

Richard J. Holwell
United States District Judge

24